UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TOKIO MARINE and NICHIDO FIRE
INSURANCE CO., as Subrogee, and
NILT, INC., as Subroger,

                Plaintiffs,

-against-

DONALD H. MACREADY, JOANN DELUCIE,
and DANIELLE MACREADY,

                Defendants.
-----------------------------------------------------------------X
DONALD H. MACREADY, JOANN DELUCIE,
and DANIELLE MACREADY,

                Third-Party Plaintiffs,

-against-

THE NATIONWIDE MUTUAL INSURANCE CO.,

                Third-Party Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
08 CV 2793 (RJD)

DEARIE, Chief Judge.

      This indemnification action stems from an automobile accident that occurred on October 18, 2004, involving Danielle Macready and Mikhail Kaplan. Danielle Macready was driving the 2004 Nissan Pathfinder ("Pathfinder") that her parents, Donald Macready and Joann Deluice (the "Macreadys"), had leased from Bay Ridge Nissan Inc., when she collided with Kaplan, a 68-year-old bicyclist. Kaplan sued Danielle Macready, the Macreadys, Bay Ridge Nissan Inc. and Nissan Infiniti LT, Inc. (collectively with Bay Ridge Nissan, "NILT") in state court seeking damages for the serious injuries that he purportedly suffered as a result of Danielle Macready's negligence. Under the terms of a General Release dated May 15, 2008, Kaplan settled all of his

claims for $350,000. The Nationwide Mutual Insurance Co. ("Nationwide"), the Macreadys' insurer, contributed $100,000 (the maximum amount under the Macreadys' insurance policy) towards the settlement and Tokio Marine and Nichido Fire Insurance Company ("Tokio Marine"), NILT's excess insurance carrier, contributed $250,000.

Tokio Marine now seeks common law and contractual indemnification from the Macreadys for the $250,000 that it contributed to the settlement. The Macreadys deny any obligation to indemnify Tokio Marine, and, in turn, have impleaded Nationwide claiming that if they must indemnify Tokio Marine, then Nationwide must reimburse them because Nationwide acted in bad faith when it agreed to settle the Kaplan Action without (1) obtaining their consent and (2) securing Tokio Marine's promise that it would not seek indemnification from them.

Currently before the Court are three motions: (1) Tokio Marine's motion for summary judgment on its contractual indemnification claim against the Macreadys[1]; (2) the Macreadys' cross-motion for summary judgment seeking dismissal of Tokio Marine's claim; and (3) Nationwide's motion for summary judgment seeking dismissal of the Macreadys' claim that it acted in bad faith. For the reasons that follow, Tokio Marine's motion is granted; the Macreadys' cross-motion is denied; and Nationwide's motion is granted.

## BACKGROUND

Unless otherwise noted, the following facts are derived from the parties' Local 56.1 Statement of Facts and are not in dispute.[2] On September 1, 2004, the Macreadys entered into a

---

[1] Tokio Marine has not moved for summary judgment on its common law indemnification claims.

[2] The Macreadys have not opposed Nationwide's motion. Although the non-moving party's failure to respond allows the Court to accept the moving party's factual assertions as true, see Local Civ. R. 56.2, the moving party must still establish that the undisputed facts entitle it to "a judgment as a matter of law," see Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).

2

39-month lease agreement (the "Lease Agreement") with Bay Ridge Nissan Inc. for the Pathfinder. Bay Ridge Nissan Inc. assigned all rights, title and interest in the Lease Agreement and the Pathfinder to Nissan Infiniti LT, Inc.

Under the Lease Agreement, the Macreadys agreed to secure various types and amounts of insurance coverage, including:

> a) Comprehensive, . . .; b) Collision insurance with a maximum deductible of $1,000; c) Property damage liability of $50,000 per occurrence; and d) Bodily injury liability of $100,000 per person and $300,000 per occurrence.

(Lease Agreement, ¶ 16.) Nationwide issued an Auto Policy of Insurance (the "Insurance Policy") providing coverage for the Pathfinder for the period September 15, 2004 through February 17, 2005 with limits of $100,000 each person / $300,000 each occurrence. Per the terms of the Lease Agreement, NILT was identified as an additional insured and as the leaseholder of the Pathfinder.

The Lease Agreement also contained an indemnification provision. Specifically, under the heading "Vehicle Maintenance and Use," the Macreadys agreed to "indemnify [NILT] for any loss, liability or expense arising from the use or condition of this Vehicle." (Lease Agreement, ¶ 19.)

On October 18, 2004, Danielle Macready was driving the Pathfinder with her parents' permission when she collided with Kaplan. Kaplan sued Joann Delucie and Danielle Macready in state court alleging that as a result of Danielle Macready's negligence he suffered serious injuries, including: (1) a fracture of the left lateral tibial plateau, requiring open reduction fixation surgery; (2) a torn lateral meniscus requiring arthroscopic surgery; (3) left knee chondromalacia (abnormal softening of cartilage); (4) traumatic closed head injury; and (5) permanent scarring and atrophy of the left lower extremity. Kaplan filed a second suit against

NILT and Donald Macready. The two actions were eventually consolidated and are hereafter referred to as the Kaplan Action.

Joann Delucie notified Nationwide of Kaplan's lawsuit. By letter dated March 25, 2005, Nationwide informed the Macreadys and Danielle Macready that it had assigned the law firm McDonald, Cohen and Rayhill to defend them in the lawsuit. Nationwide suggested to the Macreadys that because Kaplan claimed damages exceeding their $100,000 Insurance Policy limit, they should consider retaining their own personal attorney at their own expense to represent their uninsured interest. In a letter dated April 8, 2005, Gail Pariser, an attorney at McDonald, Cohen and Rayhill, informed the Macreadys and Danielle Macready that her firm had been retained by Nationwide to represent them and that they had the right to hire another attorney at their own expense. On April 14, 2005, Nationwide offered Kaplan $75,000 in cash or $90,000 as part of a structured settlement to settle his claims against the Macreadys. Kaplan did not respond to the offer. In a letter dated February 16, 2007, Nationwide tendered the Insurance Policy limit of $100,000 to Kaplan and informed NILT's counsel of the same in a letter dated April 26, 2007. Again, Kaplan did not respond to Nationwide's offer.

On April 28, 2008, Paul Cohen, an attorney with McDonald, Cohen and Rahill, spoke with Joann Delucie and advised her that a court conference was scheduled for April 30, 2008, at which time Tokio Marine would inform the state court whether it would agree to waive its right to indemnification from the Macreadys. On April 30, Cohen reported that Tokio Marine had informed the state court that it would not agree to waive its right to indemnification. Cohen also told Delucie that he had learned for the first time that Tokio Marine and Kaplan had agreed to settle Kaplan's claims for $350,000, with Kaplan agreeing to accept Nationwide's tender of the Macreadys' $100,000 policy limit and Tokio Marine contributing the remaining $250,000.

Cohen urged Delucie to obtain personal counsel to advise her on the impact of the settlement on the Macreadys' personal assets. Delucie told Cohen that Paul Arida, an attorney and friend of the Macreadys, would contact him. Arida telephoned Cohen on the morning of May 2; they discussed Kaplan's injuries and the potential liability to the Macreadys. Arida asked for, and Cohen provided later that day, copies of depositions, reports of the physical examinations of Kaplan, the police report and the Lease Agreement.

In a May 8, 2008 letter to Nationwide, Jean Gerbini, who had replaced Arida as the Macreadys' personal counsel, specifically noted that because Kaplan sought damages "well in excess of the policy limits, and his settlement demand considerably exceeds the policy limits as well," any global settlement that Nationwide agreed to had to be conditioned on NILT waiving its right to indemnification from the Macreadys. Gerbini advised Nationwide that because New York's anti-subrogation rule barred any indemnification claim that NILT might assert, "[NILT] should have no principled reason to withhold the requested releases of their indemnity claims." Gerbini noted that the parties were still "mapping out their settlement positions in advance" of the May 12 settlement conference and she requested that Nationwide seek a two-week adjournment of the conference "to allow the parties to complete negotiations."

That same day, Gerbini sent a similar letter to Tokio Marine's lawyers. Gerbini's message to Tokio Marine was the same as her message to Nationwide: "[s]ince the NILT parties are precluded from claiming indemnity from the Macreadys, there is no principled reason for [the NILT parties] to withhold the requested general releases so as to conclude a global settlement." She requested that Tokio Marine seek a two-week adjournment of the settlement conference "to allow the parties to complete negotiations."

Despite Gerbini's request that the parties seek a two-week adjournment, the settlement conference went forward before the state court judge on May 12. Neither the Macreadys nor Gerbini attended the conference. In a letter dated May 12, 2008, Paul Cohen informed the Macreadys and Gerbini that the Kaplan Action had been settled for $350,000. Kaplan executed his General Release on May 15, 2008. Tokio Marine commenced this action on July 14, 2008.

DISCUSSION

I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The "party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002) (internal citation omitted). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to come forward with specific evidence to allow the court to determine that a reasonable jury could return a verdict in its favor. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). Thus, the non-

moving party "may not rely on conclusory allegations or unsubstantiated speculation" in seeking to avoid summary judgment. Byrnie, 243 F.3d at 101 (internal citation omitted).

II.     Tokio Marine's Motion for Summary Judgment

Tokio Marine contends that summary judgment on its contractual indemnification claim is warranted because: (1) the indemnification provision in the Lease Agreement is clear and unambiguous; (2) the Macreadys had notice of Tokio Marine's settlement with Kaplan; and (3) the $350,000 settlement amount was reasonable. The Macreadys oppose Tokio Marine's motion on two grounds. First, they argue that the indemnification provision in the Lease Agreement is unenforceable because it: (1) violates New York C.P.L.R. § 4544; (2) violates New York Property Law § 337; (3) violates the Federal Consumer Lending Act; and (4) was "buried" in the Lease Agreement. At bottom, the Macreadys are arguing that the indemnification provision should not be enforced because it is procedurally unconscionable. See Ford Motor Credit Co. v. Meehan, 2008 WL 905886, at *4 (Mar. 31, 2008) ("The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice. The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power.") (quoting Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10-11). Second, the Macreadys argue that even if the indemnification provision is enforceable, summary judgment is not warranted because material issues of fact exist as to whether they were provided with sufficient notice of the settlement and whether the settlement amount was reasonable. None of their arguments has merit.

A.   Unconscionability of the Indemnification Provision

As an initial matter, Tokio Marine argues that the Macreadys have waived their unconscionability defense because they did not assert it when they answered Tokio Marine's complaint. Under New York law, unconscionability is considered an affirmative defense, see Minuteman Press Intern., Inc. v. Matthews, 232 F. Supp. 2d 11, 16 (E.D.N.Y. 2002) (citing cases), and "[o]rdinarily, 'a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case.'" See Mooney v. City of New York, 219 F.3d 123, 127 n.2 (2d Cir. 2000) (quoting Charles Alan Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1278 at 477 (1990)). Although the Macreadys asserted in their answer to Tokio Marine's complaint that Tokio Marine had failed to state a claim and that the settlement amount was not reasonable, they did not assert that the indemnification provision is unenforceable on unconscionability grounds. Because the Macreadys failed to raise the affirmative defense in their answer, and have provided no cause for their failure to do so, it is waived.

In any event, even assuming that the Macreadys did not waive the defense, they have not raised a genuine issue of material fact that precludes summary judgment.[3]

i.   *New York C.P.L.R. § 4544*

Section 4544 provides, in relevant part, that:

> The portion of any printed contract or agreement involving a consumer transaction . . . where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared.

---

[3] Whether a contract provision is unconscionable is a question of law for the Court to decide. See e.g., Allianz Global Corporate & Specialty, N.A. v. Sacks, 2010 WL 3733915, at *6 n.3 (S.D.N.Y. Sept. 23, 2010) (citing Sablosky v. Gordon Co., 73 N.Y.2d 133, 138 (1989)); Meehan, 2008 WL 905886, at *3 (citing King v. Fox, 418 F.3d 121, 130 n.5 (2d Cir. 2005)).

The Macreadys argue that summary judgment is not warranted because the indemnification clause found in the copy of the Lease Agreement that Tokio Marine submitted in support of its motion is not printed in at least 8-point type.[4] In support of their argument, the Macreadys submit an affidavit from their attorney in which he attests that he measured the copy of the Lease Agreement that Tokio Marine submitted as Exhibit A to its moving papers and concluded that the type size is "no more than perhaps at most 4 point type." The problem for the Macreadys, who bear the burden of proof of demonstrating non-compliance with § 4544, see e.g., Tsadilas v. Providian Nat'l Bank, 13 A.D.3d 190, 192 (1st Dep't 2004), is that Exhibit A is not an exact copy of the Lease Agreement, but rather a reduced-sized copy. In its reply papers, Tokio Marine submits an exemplar of a form lease agreement that it contends is identical to the Lease Agreement signed by the Macreadys and an affidavit from a forensic document expert that the type size of the exemplar is at least 8 point. The Macreadys, who raised the type-size issue for the first time in opposition to Tokio Marine's motion, have not come forward with any evidence that refutes or otherwise questions Tokio Marine's expert's qualifications or measurements. Nor do they dispute Tokio Marine's contention that the exemplar is identical to the Lease Agreement that the Macreadys signed. Accordingly, because the Macreadys have failed to raise a triable issue of fact as to the type size of the Lease Agreement, the Court rejects their argument that summary judgment must be denied. See Meehan, 2008 WL 905886, at *5 (awarding summary judgment to plaintiffs: "The new copy of the Lease directly responds to an

---

[4] It is not entirely clear whether § 4544 even applies in a federal court diversity action. The Macreadys have not come forward with any case law in support of their position that it is and the only district courts to have addressed the issue have held that § 4544 is a state law procedural rule of evidence "and consequently is not applicable in a federal court sitting in diversity." Zuckerman ex rel. Zuckerman v. Camp Laurel, 2008 WL 4386837, at *1 (S.D.N.Y. Sept. 24, 2008); see also Mickle v. Christie's, Inc., 214 F. Supp. 2d 430, 432 (S.D.N.Y. 2002).

issue raised in Meehan's opposition papers. Meehan has not questioned the authenticity of the copy or indicated that he wished to submit additional evidence to refute the validity thereof. In this regard, he could have moved for leave to file a sur-reply but chose not to."); see also B Sharp Musical Productions, Inc. v. Haber, 27 Misc. 3d 41, 899 N.Y.S.2d 792 (App. Term, 1st Dep't) (Feb. 19, 2010) (holding that defendants failed to raise triable issue of material fact where they did not establish that the type size of the copy they submitted in opposition to summary judgment motion was identical to that of the original contract).[5]

### ii. *Federal Consumer Leasing Act*

The Macreadys next argue that the indemnification provision is unenforceable because it violates the Federal Consumer Leasing Act, specifically regulations 12 C.F.R. §§ 213.3(a) and 213.4(d). When read in conjunction, §§ 213.3(a) and 213.4(d) require that a consumer lease agreement "clearly and conspicuously" disclose certain leasing information, including:

> The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.

The Macreadys offer no case law support for their position that the indemnification payment sought by Tokio Marine is a type of "other charge" that is contemplated by the regulations and the position finds no support in the plain language of the regulations. Accordingly, their argument that the indemnification provision is not enforceable because it violates the Federal Consumer Leasing Act is rejected.

---

[5] For the same reasons, the Court rejects the Macreadys' argument that the Lease Agreement violates New York Property Law § 337's requirement that a lease agreement be printed in at least "eight-point type in ink that contrasts with the paper used."

### iii. *Hidden Indemnity Provision*

Finally, the Macreadys argue that the indemnification provision in the Lease Agreement is "unlawful, vague, ambiguous and unenforceable." The gist of their argument is that because the provision is "hidden" within a paragraph 19 of the Lease Agreement entitled "Vehicle Maintenance and Use" and because it follows language dealing with permissible alterations to the Pathfinder's airbags, the "reasonable interpretation is that [the] hidden indemnity sentence applies to the preceding alteration from which the lessor's liability had just been released." "Clearly," the Macreadys argue, "were a more broad interpretation of this hidden sentence desired, it would be more clearly located in paragraph 16 (Insurance), or paragraph 27 (Damage, Loss or Potential Loss of this Vehicle), or even possibly paragraph 20 (Excessive Wear and Use)."[6]

The indemnification provision is somewhat camouflaged in paragraph 19, which itself is located on the back side of a two-page form agreement. Such an important provision should be more conspicuous in the Lease Agreement. At the same time, the Macreadys can hardly argue that <u>they</u> were prejudiced by the placement of the provision in paragraph 19. The Macreadys admit that despite the admonition directly above the agreement's signature line that they not sign the agreement until they had read it in its entirety, they signed the agreement despite having read only the "first page about the fees," which was all they were concerned with. (Donald Macready 12/16/08 Dep. Tr. at 31-34; Joann Delucie 12/16/08 Dep. Tr. at 16-18.) Thus, even if the indemnification provision were more conspicuous, the likelihood is that the Macreadys would

---

[6] The Macreadys also argue that the Lease Agreement is unenforceable because it is a contract of adhesion, a "take it or leave it proposition with no opportunity for negotiation." Nothing in the record suggests that the college-educated Macreadys were prevented from reading the Lease Agreement, from asking NILT's representatives to explain any terms, or from simply walking away from the dealership without signing the agreement. Accordingly, their adhesion argument is rejected.

11

not have read it. Moreover, the language -- "You agree to indemnify us for any and all loss, liability, or expense arising from the use or condition of this Vehicle" -- is not unclear or ambiguous. To the contrary, it provides that the Macreadys must indemnify Tokio Marine for all losses and liabilities, and not as the Macreadys contend merely for losses and liabilities that arise from alterations made to the vehicle's airbarg. In sum, the Court concludes that the Macreadys' attempt to avoid the Lease Agreement's clear indemnification language is unavailing.[7]

B.  Notice and Reasonableness of Settlement

The Macreadys argue that even if the indemnification provision is enforceable, summary judgment is not warranted because genuine issues of fact exist as to whether they had notice of the settlement with Kaplan and whether the settlement amount was reasonable. Again, the Court disagrees.

*i.  Notice*

"Under New York law, when an indemnitor had notice of the claim against it and an opportunity to take over the defense, the indemnitee need only show potential liability, i.e., that the indemnitee could have been found liable at the trial of the underlying action." Koch Industries, Inc. v. Aktiengesellschaf, 727 F. Supp. 2d 199, 222-23 (S.D.N.Y. 2010) (citing

---

[7] The Macreadys also contend that the Lease Agreement violates UCC § 2A-505. Section 2A-505 provides:

> On termination of the lease contract, all obligations that are still executory on both sides are discharged but any right based on prior default or performance survives.

The Macreadys concede that "unquestionably, the accident on October 18, 2004, took place within the effective term of the [Lease Agreement]." Nevertheless, the Macreadys argue that summary judgment is not warranted because by the time Tokio Marine filed its lawsuit against them in July 2008, the Lease Agreement had already expired and any contractual obligation to indemnify expired with it. The Macreadys offer no case law in support of their position that § 2A-505 bars Tokio Marine's claim. Nor would the Court expect them to be able to do so; Tokio Marine's right to indemnification arises from the Macreadys' performance (or lack of performance) during the term of the Lease Agreement.

cases). "When the indemnitor had no notice or opportunity to defend, the indemnitee must demonstrate 'actual liability' on the underlying claim." Id. In arguing that they had insufficient notice, the Macreadys complain that neither Tokio Marine nor "anyone acting on its behalf had informed [them] about the indemnity requirement while the bodily injury action was pending." They further complain that by the time they were actually informed of the settlement on April 30, 2008, they believed that it was final, "that there was nothing they could do about it," and that objecting to it would have been futile.

The Macreadys' first argument is unavailing; neither NILT nor Tokio Marine was under any obligation to inform the Macreadys of their contractual obligation. The Macreadys' second argument is also unavailing. The First Department recently concluded that the relevant inquiry in determining whether an indemnitor had sufficient notice of a settlement is not whether the indemnitor had specific notice of the indemnitee's settlement negotiations, but whether the indemnitor had notice of the underlying claim such that it had an ample opportunity to defend its interests. See Deutsche Bank Trust Co. of Americas v. Tri-Links Investment Trust, 74 A.D.3d 32, 43-44, 900 N.Y.S.2d 246 (1st Dep't 2010); see also Nesterczuk v. Goldin Management, Inc.,77 A.D.3d 800, 804, 911 N.Y.S.2d 367 (2d Dep't 2010) (contractor was bound to indemnitee's settlement of third-party claim where "the contractor was on notice of the plaintiffs' claims against the [indemnitee], the reasonable possibility that those claims were encompassed by the indemnification clause, that the settlement was reasonable and made in good faith, and that the [indemnitee] could have been found liable to the plaintiffs"). The Macreadys had ample opportunity to defend their interests; they were both named as defendants in the underlying Kaplan Action and Nationwide suggested to them at the very beginning of that litigation that they should consider obtaining personal counsel to defend their uninsured interests.

Even if the relevant inquiry were whether the Macreadys were given sufficient notice of settlement negotiations, summary judgment would still be warranted. The Macreadys' contention that by the time they were told of the settlement on April 30, 2008, they believed it was final and that objecting to it would have been futile is belied by Jean Gerbini's May 8, 2008 letters to Nationwide and Tokio Marine requesting a two-week adjournment of the May 12, 2008 settlement conference so that the parties could continue to negotiate. Having received no response and knowing full well of the possibility that Tokio Marine would seek and very likely be entitled to indemnification from them (otherwise Gerbini would not have insisted that Tokio Marine waive any indemnification right as a condition of the global settlement) the Macreadys were at the very least obligated to attend the settlement conference before the state court and, if they truly believed that the amount that Tokio Marine had offered Kaplan to settle his claims was unreasonable, object and offer to defend the case. Standing idly by was simply not an option under the circumstances.

### ii. *Reasonable Good Faith Settlement*

The only remaining question is whether the settlement amount was reasonable and reached in good faith. "In the context of indemnification, courts routinely find settlements to be 'reasonable' when the recovery at trial could have been greater." Koch Industries, Inc. v. Aktiengesellschaf, 727 F. Supp. 2d 199, 225 (S.D.N.Y. 2010) (citing cases). Tokio Marine argues that the settlement was reasonable given: 1) the serious injuries alleged by Kaplan in his verified bill of particulars, which required him to undergo an open reduction internal fixation surgery to his knee that required him to spend 22 days in the hospital; 2) a physician's report prepared three years after the accident that opined that Kaplan's prognosis was "fair" and that he was "partially disabled"; 3) the potential for a "runaway verdict" in state court; and 4)

Nationwide's conclusion that Kaplan's injuries were serious enough to warrant it offering the Macreadys' $100,000 policy limit. Other than simply reasserting that their daughter was not negligent in causing the accident, the Macreadys have not come forward with any evidence to suggest that the settlement was unreasonable. More is needed at this stage of the proceedings. See Deutsche Bank, 74 A.D.3d at 43-44 ("An indemnitor with notice 'cannot object to a settlement merely because it believed it could have driven a tougher bargain, or been a tougher litigator.") (quoting Conopco, Inc. v. Imperial Chem. Indus. PLC, 1999 WL 1021077, at *5 (S.D.N.Y. Nov. 8, 1999)); Tokio Marine and Fire Insurance Co. v. Pagan, 2003 WL 1858147, at *2 (S.D.N.Y. Apr. 9, 2003) ("[W]hile [the Pagans] allege that plaintiffs settled hastily, without sufficient investigation of the damages and the various defenses available to the Pagans against [Wilkins] . . . [the Pagans] have failed to adduce any competent evidence of record that materially supports any of these speculations. Therefore, as they were on notice of Wilkins' claim, they are bound by their indemnitee's settlement.") (citing cases). Finally, the Macreadys' argument that Tokio Marine "did what was best for it" in settling with Kaplan is wholly insufficient to establish a lack of good faith. "Courts can presume an indemnitee's good faith where the indemnitee's self-interest would require it to seek a favorable settlement, such as where an indemnitee faces potential liability for some or all of [third party] plaintiffs' damages." Koch, 727 F. Supp. 2d at 225 (citation and quotation marks omitted). Given the Macreadys' insistence prior to settlement that it was not obligated to indemnify Tokio Marine, a position that the Macreadys continue to assert in this litigation, Tokio Marine had every incentive to minimize the amount it paid to settle Kaplan's claims. See id.

III. Nationwide's Motion for Summary Judgment

Nationwide moves for summary judgment, seeking the dismissal of the Macreadys' claim that it acted in bad faith when it settled the Kaplan Action without first getting their consent and without securing Tokio Marine's promise that it would not seek indemnification from them. The Court is satisfied that summary judgment for Nationwide is warranted.

There is a "strong presumption in New York against a finding of bad faith by an insurer." Schwartz v. Twin City Fire Ins. Co., 492 F. Supp. 2d 308, 328 (S.D.N.Y. 2007) (quoting Hugo Boss Fashions Inc. v. Federal Ins. Co., 252 F.3d 608, 624 (2d Cir. 2001)). To establish a claim of bad faith, a plaintiff must establish that the "insurer's conduct constituted a 'gross disregard' of the insured's interest." Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453-54 (1993). "Gross disregard" requires a showing that the "insured engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted." Id. at 454. "Naturally, proof that a demand for settlement was made is a prerequisite to a bad faith action for failure to settle." Pavia, 82 N.Y.2d 445, 454; see also Vecchione v. Amica Mut. Ins. Co., 274 A.D.2d 576, 578 (1st Dep't 2000) ("It must be shown that a demand for settlement was made and that the policyholder lost an actual opportunity to settle the claim at a time when all serious doubts as to liability were removed.") (citing Pavia). Because the Macreadys have not come forward with any evidence that Kaplan offered to settle his claims for an amount less than the Macreadys' policy limit of $100,000, their bad faith claim against Nationwide must be dismissed. See CBLPath, Inc. v. Lexington Ins. Co., 73 A.D.3d 829, 900 N.Y.S.2d 462, 465 (2d Dep't 2010) ("Lexington established that CBL's bad faith claim could not

stand, as there was no pre-litigation settlement demand made within the policy limits.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Tokio Marine's motion for summary judgment is granted in its entirety; the Macreadys' motion for summary judgment is denied in its entirety; and Nationwide's motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge